If it pleases the Court, my name is Matthew Hale, and I represent the appellants David Lee and Daniel Lloyd. This case is about the unconscionability of the appellee's arbitration provisions and what effect that unconscionability has on their cardholders, such as David Lee and Daniel Lloyd. The usual course of litigation in which the unconscionability of an arbitration provision comes up focuses on the card issuer. May it compel arbitration. In this case, the focus turns on what effect the unconscionable arbitration provision has on the card issuer to what effect it has on the cardholder, who would otherwise have an enforceable right to mandatory arbitration were it not for the unconscionable and unenforceable provision. What's the injury? The injury here is that the... You understand, for the benefit of our audience, that your client has not been subject to arbitration, has not entered arbitration, has no current ongoing actual dispute apparently with these banks, these credit card issuers. Your client is disturbed by the unconscionability as alleged in the agreement, right? I think that's... part of that's true, Your Honor. I think his injury is that he paid for an enforceable arbitration provision, which he didn't get. He does have a dispute with the credit card companies by their very contract, but a dispute like this falls within the parameters of what they would want to take to arbitration, what they say must go to arbitration. So there is a dispute, and... This is a very odd case. Now, your client could go to arbitration. If he did go to arbitration, couldn't you complain of any of the provisions that are overreaching? No, Your Honor, I could not. And the reason I could not, there are several reasons I can't go to arbitration. First and foremost is the agreement itself does not allow the parties, at least in the American Express agreement, to go to arbitration because it says it's reserved for the court. So by the very terms of the agreement, we cannot go to arbitration and hash out whether or not the arbitration provision is or is not conscionable. Second, were we to do so, that would violate the terms of Nagrampa and Buckeye. Third, there would be a waiver of any claims. For example, if we were to initiate arbitration, it could be set under the Fassell case and the recent Ninth Circuit case in Collier, that we'd waive all of our objections whatsoever to the unconscionabilities found in the arbitration clause. Now, if it's unconscionable, you don't have to go to arbitration. You could go to court, but you don't want to go to court. Is that right? Yes, we would prefer to go to arbitration. I'm sorry? You're okay. Okay. Just a little echo on the system. Yes, Your Honor. Yeah, it's fine. I'm not a frequent player. Don't worry. You're doing just fine. Go ahead. Yes, I'm sorry, Your Honor. I forgot your question. Okay. The question was why not go to court. Well, they would prefer to arbitrate, and they believe in arbitration. I think part of the problem we've had in the district court is that there's a perception problem. The judges couldn't believe that anybody would want to go to arbitration. I think Judge Breuer laughed me out of court when I brought that up. I was like, I've never heard anybody want to go to arbitration before, and he was laughing. But I don't think it's such a stretch because the Supreme Court has said it's a good thing. The Congress has said it's a good thing. There's this growth of the ADR industry in California. I know it seems like half the retired district – pardon me – Superior Court judges in Los Angeles now work for JAM. So it's a growing thing, and people are revealing themselves to it because of the expediency of it. For example, we're a year and a half in this case, and we're still at the preliminary stage. If we'd done arbitration, this case would have been all over. Well, let's assume that you win. What are you going to arbitrate now? We would arbitrate the fraud claim. Well, actually – You don't have any frauds. You haven't accused a fraud. What would happen here is because of the way it's set up, if you were to remand this case, it would go back down to the district court. They would either – No, no. Let's say if you ultimately prevail in this litigation, you win everything. You win standing. You win the ability to arbitrate under your own terms. What are you going to arbitrate? If we could arbitrate, we would arbitrate the fraud claim. However, that could not happen because what would happen is we'd go down. The court would find the arbitration clause to be unconstitutable, either because it's outside the agreement or because Buckeye or Negrempo would mandate the court have to decide it. At that point, the arbitration agreement would fall away, and everything would have to be done in court. We didn't prefer to do that. We wanted to arbitrate, and we paid for that, but we can't now. I know. I mean, at the end of the day, you don't get arbitration anyway under your own theory. That's correct. We don't at this point, Your Honor, yes, because of the unconscionable terms. That's not what we prefer, but that's what we end up with based on the circumstances of this case. How do you deal with the California Supreme Court decision in Meyer against Sprint or the Ninth Circuit decision in Walker against Geico? I think both of those cases support us because both cases say that under the UCL and the CLRA, one has to have an actual damage, some sort of monetary damage. We have that here. We have Mr. Lee paid $30 for his annual fee. Mr. Lloyd paid $4.50, I believe. There's $3.75 charge for the gift cards, $39, I believe, for the Capital One card. So there's a monetary payment there, and part of that payment went for the arbitration provision. When they got their card agreement, there's only two things the contract allows them to do. That's one, use the card up to the limit, and two, have a right to mandatory arbitration. They didn't get what they paid for in that sentence, so it's a defect. And the California Supreme Court in Armendariz says, and this court recently reiterated, I believe, in Davis v. Chase matter, that an unconscionable term is a contractual defect. So it's just like buying a car with a bad set of brakes. You didn't get what you paid for. So we didn't get what we paid for here. We didn't get a viable, enforceable arbitration agreement that could be used by the consumer. And that's our loss. Okay. Would you like to save some time for rebuttal? Do you have some other points you'd like to make? How much time do I have left? Is it 13 minutes I have here? You have your time. Okay. You have over 13 minutes. I just want to say one thing here. It's very important to me here, if I could. It's about assuming, if I'm lucky enough, that you should remand my case. It's your client's case, right? Well, yes. My client's case. The issue of Judge Patel. Judge Patel's acts in this case clearly call for her removal. For among other reasons, she has interjected her own personal beliefs into the Capital One case. Granted, the totality of one's life and experience can inform one's legal philosophy and approach to being a judge. However, it is altogether a different thing when a judge allows a given experience in her life to inform her view of a given case. We believe that Judge Patel's belief that this was, quote, a made-up case, was informed by her personal experience, as she said, of having never had a problem with an unspecified card issuer that she could not resolve by a simple phone call. That's in the record at page 22, lines 20 through 24. Without ever having considering that a chance exists that a sitting federal judge might be afforded some different and better treatment than a regular cardholder when it comes to dispute resolution, or that she never raised with them the unconscionability of the arbitration clause like Lee did, Judge Patel's comments are directly analogous to a situation where a judge who was presiding over an automobile defect case comments on and allows her experience to have owned the brand of car which claimed defect was in to color her perception of the case. So, for example, what if Judge Patel had said, I had a model of the car for years and I've never had a problem with it, or there was a time I could take it in and they'd repair it and there'd be no problem. What would that raise about a bias and a cost for reassignment? Well, counsel, we all have life experiences. Right. We can't avoid that. Right. I agree with that, Your Honor, but I believe that Judge Patel crossed the line. For example, she found Well, isn't it just a provocative comment to get an illicit response? I mean, that often happens in district court and on our court where people are engaged in colloquy and some things come to mind and you simply ask about them. It may not indicate anything at all. Well, that's true, Your Honor, but I think this is a totally different animal. I mean, essentially, Judge Patel accused me of being a liar and unethical, my client of being a liar, telling me my case had no merit whatsoever, that I made it up just to make a buck. Certainly that definitely calls into question her bias and preconceived notions about this case, calling it manufactured as a means of obtaining attorney fees and so forth. I think if she really had some doubts about it, what she should have done is set an OSC regarding sanctions under Rule 11 and let us present evidence. Instead, what she did is she asked Mr. McGuire what he wanted in the sanctions. So I just think that if she doesn't meet the test vis-à-vis reassignment for a judge, I don't believe that she could put out of her mind or previously expressed views and findings. Reassignment would definitely preserve the appearance of justice, and there would be no waste in this case because we're at the beginning if we were to get a new judge. So that's really all I have to say, and I'd like to reserve the balance of my time. Okay. We'll hear from the credit card issuers at this time. If you've decided on an allocation of time. Generally, Your Honor, I'm speaking first and Mr. McGuire is speaking second. All right. Good morning. And we will make every effort not to repeat ourselves. Let me start by saying that three district court judges addressed the issue before this court and came to exactly the same conclusion, that there is no standing. And each of them got that right, and their decisions should be affirmed. The characterization by Mr. Hale of the issue before the court as the issue of the unconscionability of the arbitration clauses actually is not the issue before the court, as the questioning certainly seems to confirm the panel clearly understands this is a standing case. It is an Article III standing case, potentially a state law standing case, but it is not a question of determining unconscionability. Lujan sets the standard that's set forth in our briefs in detail, but it is clear that the Supreme Court has said, and for good reason, because of the burden on the court, because the federal court is a court of limited jurisdiction, that you must meet, if you are invoking federal jurisdiction, certain minimal standards. The injury must be palpable and distinct. It must be particularized. It must be concrete. It must be actual. It must be imminent. It must not be conjectural. It must not be hypothetical. There must be a causal connection. The injury must be capable of being redressed by a favorable decision. If you fail any of these tests, you do not satisfy the standard, and we would submit that the clients, the plaintiffs here, have not satisfied any of them. Two recent cases which are before the court, which are Ninth Circuit cases, make this clear. I think the Serena case is an interesting case. It deals with grand jury service, where the plaintiffs had not evinced any particular interest in being grand jurors, and also the Action Department case, where the ordinance at issue had not even been evoked against the plaintiff, are both good examples of how that Article III standard is applied. This is what I would call the proverbial Nile crocodile of the Lujan case, but it's even more extreme than Lujan because Mr. Hale's clients haven't even said they want to go visit the Nile crocodile, much less bought plane tickets or booked a trip. With respect to the issue as Mr. Hale characterizes it, again, it's a standing issue. It's not about enforceability, because the fact of the matter is that both American Express and Chase, who we represent, and I think I can say this for Capital One as well, are more than happy to honor their clauses exactly as written and exactly as is presented to the cardholders. Plaintiff says he wants to arbitrate. We would be more than happy to arbitrate, but we're not prepared to arbitrate a case where there is no dispute. And I think it needs to be remembered that arbitration is really just a dispute resolution mechanism. It is not a claim in itself. It's just a way of resolving an underlying dispute. It's like bringing a lawsuit or going to small claims court or going to a binding mediation. It's nothing more than a dispute resolution mechanism. Counsel, let's suppose there was a real dispute here and it went to arbitration and counsel claimed that many of the conditions of the arbitration were overreaching. Could that be litigated in that arbitration? And could they prevail on reasonable terms for the arbitration? The answer to that question, Your Honor, is actually complex, partly because determining what goes to arbitration and what doesn't is highly contextual based upon the underlying dispute and also depends, of course, on the decisions of this Court in Negrompa and the Buckeye decision. But let me try to answer your question in a slightly different way. The defendants here are not seeking to deprive the plaintiffs of a remedy by any means. There are two ways in which the plaintiffs can get a remedy. All of the cards at issue have a broad arbitration provision. So if a party has a dispute, they can elect arbitration. It's not mandatory. It is entirely elective. They can elect arbitration. If there then is a dispute as to the arbitrability or the enforcement of the arbitration clause, for example, say Mr. Hale's clients raise the exact issue here, which is the clause is unenforceable, what happens is they bring their claim in arbitration and if he wants to raise that issue, he could bring that issue to court. He could file a parallel case that says I want to arbitrate this claim. I have a claim about the fees I'm being charged, for example. I want to arbitrate that claim on a class action basis. I'm going to file my arbitration on a class action basis, and now in a parallel proceeding, because of Negrompa and Buckeye which say that issue is a gateway issue, I'm going to initiate a parallel court proceeding to determine whether in fact that class action waiver is enforceable in the context of this claim. So one way or another, he can get that issue decided, but the issue needs to be decided in context. The other thing he can do is he can just bring a Federal court proceeding or a State court proceeding as appropriate to the claim and say I have two claims. One is that I'm being improperly or my interest is improperly calculated, and number two is in the context of this dispute, I want to arbitrate on a class action basis. Please, court, tell me I can do that. But it all goes back to the point which is there's no relief denied here if you have a live dispute. The problem here is we have no live dispute. And one of the things, and this is really an important point, that the cases tell us, whether it's the Discover Bank case, which is, of course, a California Supreme Court case, or this court's decision in Schroer, or even this court's decision in Hoffman, which Judge Thomas was involved in, is that the decision as to whether an arbitration clause is enforceable is highly contextual and specific to the dispute before the court. So in order to take advantage of arbitration, Mr. Lee has to be late on his payment or fail to make a payment? That may be the true fact, which is he needs to at least have a live dispute. But let me note, he hasn't challenged those provisions in the agreement. And I would refer the Court to the Meyer decision. Your Honor asked about Meyer and how does it apply here. Meyer, of course, in our view, is exactly on point and is dispositive of both the state law claims under the CLRA as well as the DEC relief claim, both of which were expressly addressed by Meyer. But Meyer also has some very interesting discussion about exactly this issue that Your Honor raised, which is, and I can't remember the page, I think it's at 643, Meyer talks about the implications of concluding that there's standing when the allegation is that there's an unconscionable provision in a contract, and how unfriendly that is to consumers, to cardholders. And what the Court says there, and I quote, is that the plaintiff's interpretation of the clause, so that to invoke standing when you complain about an unconscionable term but there's no live dispute, and I quote, would have the perverse effect of requiring consumers whose contracts harbor unconscionable remedies to sue within three years after entering such a contract, regardless of whether these remedies have been used against them. It is doubtful this anti-consumer result is what the legislature intended. And I think that speaks powerfully to exactly this point, which is standing requires a live claim and damage under both Article III, under the UCL, under the CLRA, and for pursuing a declaratory relief claim. You're now almost at ten minutes. Oh. Let me just see if I have any other profound points I'd like to make, and then I will turn it over to Mr. McGuire. Let me just say, it's important to go back to where we began, which is standing and why there are standing requirements. Let me briefly address the benefit of a standing requirement, which is at the core of this. Everyone is benefited by having a standing requirement. The courts, obviously, are benefited because standing is the prerequisite, the gateway to a dispute resolution. If people appeared before this court daily with hypothetical, abstract disputes like the dispute that's raised by the plaintiffs in these cases, the courts would be more overburdened than they already are. That's why the Lujan case confirms that there are strict standing requirements, certainly before you get into the federal courts, but the same applies to state court. So the courts, obviously, are benefited, and that benefits all of us as society. Businesses are benefited by standing requirements, or defendants are benefited by standing requirements. They aren't burdened by hypothetical claims, and they're able to evaluate the claims and try to resolve them. Standing allows you to determine, what's my defense? Is this something that I can call and say, let's get this resolved and not burden the courts? But importantly, consumers are benefited, because they don't need to rush to the courthouse when they have a hypothetical claim. And that's exactly what the Meyer Court recognized in its discussion of statute of limitations. Mr. Hale's clients had this contract for more than three or four years, which are the relevant limitations period. His time is up. His claims were triggered the day he got the contract. He should have known he had these claims. And, frankly, the way they're pled under Meyer, one could make that exact argument. But he's benefited by the fact that until he has a live dispute that's triggered, the statute doesn't begin to run. Why don't we hear from Mr. McGuire? Thank you. Thank you. Thank you for your argument. Good morning, Your Honor. James McGuire, Morrison Enforcer for Capital One. I actually don't have anything to add to what Ms. Strickland had to say to the Article 3 analysis, unless the panel has questions. I would like to briefly stand up and defend Judge Patel. I was the litigant who was in front of Judge Patel. And I think as Judge Thomas has made clear, what Judge Patel was engaged in was nothing more than an animated colloquy with counsel here on what she perceived to be a complaint that she ultimately determined where the plaintiff lacked standing. And really what Judge Patel did was nothing more than what we have federal district judges do all the time, where she ultimately rendered a decision in favor of one party and against the other. And when federal district judges do that, invariably one party feels that they got the short end. But, you know, it really was almost by definition what we expect federal district judges to do. And she certainly didn't express any bias, and her questions may have been harsh. But, again, you know, federal district judges have personalities and they're not automatons and we live with that on a daily basis. The critical legal point here is that there's no suggestion that if this panel were to tell Judge Patel that she got it wrong, that she wouldn't do what you told her to do, that she wouldn't take that and then proceed to preside over the case in the normal course. And I think that Mr. Hale's position on this has really made a mountain out of a molehill when it was a pretty routine set of hearings in front of Judge Patel, who expressed skepticism, healthy skepticism about one litigant's position. So we would ask that we simply follow the normal course should the case be reversed. Any questions from the panel about any of the other issues? Anything particular about Capital One? I don't see any. Thank you for your argument. Thank you, Your Honor. Mr. Hale, you have some rebuttal time. With regard to whether there's a real live dispute, if one looks at each of these contracts, they'll have a section in there that will say where they'll define what a dispute is. It can be over a contractual term that's specifically in these contracts. It can be over a disputed charge or something like that. What we have here is a dispute over a contractual term and also a disputed charge, because the annual fee is billed on the first bill yearly with regard to these credit cards. So we can say that the appellants are challenging the $35 fee or the $450 fee. Let's charge them under the annual fee, and that is tied to the dispute they have contractually with American Express. So there is a live dispute based on the contract, based on the terms of the contract. That's the universe of what the disputes may be. We fall squarely within that. Aren't there card issuers who don't charge annual fees? There are, Your Honor, but that's not the case before this Court. And frankly, I don't think our theory of the case would work with regard to non-fee cases versus fee cases. So it's a different animal. So what are you disputing on the annual fee? Pardon me? What are you disputing on the annual fee? Because we're seeking the return of the money. Why? Because we paid for it. Like I said, what they've done is they've sold the public a bill of goods. They go on TV with John Macro talking about their dispute resolution for Amex, which is arbitration. You know, they induce people to pay this fee. You know, something special to have, one of these cards, pay this money, that's what you get. But you don't get that. If you go to one of these car dealerships where they sell many different brands or car dealerships across the street from each other and one charges a $350 delivery fee and the other doesn't, can you seek relief in court against the party that charges the $350 fee? Well, you might be. I don't know, you know, I don't know what the agreement the carmaker has, that particular carmaker has with the consumer. Maybe that fee is somewhere else in the sales. The point is your client chose a card which had a fee, right? Yes. Could have chosen a card that didn't have one. I think he probably has some of those as well. I'm not sure. But theoretically, what's the difference on your standing argument? Your argument is I entered into a contract and I get to challenge its terms. Why does the fee matter at all to your standing argument? Well, it's just one element of it. We could go on the pecuniary damages aspect of it, of standing. You know, we spend money on life-affecting products. Wait, I'm asking, you said I have standing because we pay an annual fee. And I said, what analytical difference does it make under your theory whether you pay an annual fee or not? And you said, well, I have damages. But you didn't answer my question. All right. He has damages because he paid a fee and didn't know what he bought. He got a defective arbitration provision. You don't have to find standing. Analytically, what's the difference under your theory between a no-fee credit card and a fee credit card? I think you could find standing under both because you could say that, for example, with regard to the Serrano case where they talked about, you know, did he intend to make application for the grand jury if he had intended to do so. If he had pled that, that would have been enough to get him standing. Or like the little deal case, the ADR cases, where it's an intent to do something. We could say he intended to arbitrate, and even if he hadn't paid a fee, he'd be precluded from doing so because he could not engage in arbitration based on the way that the arbitration provisions are written. So there's no difference analytically. Well, there's consideration, Your Honor, for the promise to arbitrate. So that's the distinction difference. Okay. Anything more?  Anything more? Yes, I do, Your Honor. I just want to read to you because we seem to – the other side seems to gloss over this. The terms of the contract itself, at least with Amex and Capital One, say they cannot arbitrate. Let me read this to you. Arbitration relative to American Express's arbitration clause is a factual impossibility by the very terms of the card member agreement, which states everything is arbitrable, quote, except for the validity, enforceability, or scope of this arbitration provision or the agreements. With regard to Capital One, quote, the validity and enforceability of any class action waiver is a question for a court of competent jurisdiction, not for an arbitrator to decide. So as a factual impossibility based on what's in the contract, we cannot go into arbitration under the contract as they're written. So earlier I was asked what we would do if we remanded this case. If you remanded the case, what would we arbitrate? It would be fraud, UCL violations of inconstability, and our CLRA claims are on it. You know, it's worth noting, Amex says they want to arbitrate, but they really don't. In the Merchant's case, Ms. Strickland said on the record that if they remanded that case back to the district court without the class action ban, they didn't want to arbitrate. They subsequently wrote a judge in another case, which is in the motion for eliminating, saying they didn't want to arbitrate in another case where they didn't have the right to block class actions in the context of arbitration. So this is really a sham argument. They're not interested in arbitration when you get right down to it. With regard to Mr. McGuire's statement about he believes that if this case was remanded back to Judge Patel that she could follow the court's dictates, I think her feelings are so strong that I don't think she could do that. We're going to have three big issues come up if there's a remand. We're going to have discovery issues, which are discretionally involved. We're going to have class certification and attorney's fees. I don't see how when she said that I'm unethical and I don't tell the truth, neither does my client, how she can put that out of her mind and rule in favor of the plaintiff, pardon me, the appellants back on remand. I don't believe that under those circumstances, having a case back before her, one could say that we have an impartial trier of the facts. That's all I have to say on it. Okay. For your argument, thank both sides for their argument. The case that's argued will be submitted for decision.
judges: Fletcher B. , Hawkins, Thomas